UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KATHY S. LAABS,

        Plaintiff,

  v.                                      Case No. 16-C-1424

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Kathy S. Laabs' applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. 42 U.S.C. § 405(g). Plaintiff claims that the ALJ erred in assessing her credibility, weighing the medical opinions, and determining her RFC. For the reasons set forth below, the Commissioner's decision will be affirmed.

## BACKGROUND

On September 26, 2012, Plaintiff, then age 53, filed an application for DIB and SSI with an alleged onset date of June 8, 2012, due to cervical degenerative disc disease, neuropathy, and sleep apnea. R. 196, 199, 237. The Social Security Administration (SSA) denied the applications initially on January 9, 2013, and upon reconsideration on July 16, 2013. R. 134, 143. After her application and request for reconsideration were denied, Plaintiff requested an administrative hearing. ALJ John

Kraybill held a hearing on January 29, 2015. Plaintiff, who was represented by counsel, a medical expert, and a vocational expert (VE) testified. R. 62–87.

At the time of the hearing, Plaintiff was 4'10" and weighed 181 pounds. R. 68. She lived by herself in Oshkosh, Wisconsin, and received medical care through the local Veterans Administration Medical Center. R. 66, 68. Plaintiff testified that the physical problems that prevented her from working included numbness in three-quarters of her face, both arms, and her feet. She described the numbness in her feet as constantly walking barefoot on shards of glass. R. 69. She said that the numbness extended from her shoulders down to her fingertips, as well as from both knees down her legs. R. 73. She also said that she had also developed issues with the control and touch of her hands, specifically that she was struggling with dexterity, including holding a pencil and sewing. R. 73. She testified that the pain would prevent her from even writing a letter and that only laying down gave her relief. R. 74. The only medication she was taking at the time was Meloxicam from which she experienced no side effects, though she had tried other medications in the past. R. 67.

Plaintiff testified that she had previously held jobs as a telemarketer, personal assistant, general laborer, escrow officer, and bus driver. R. 238. She said she had most recently worked as a bus driver, but that she no longer does because of the numbness she experiences in her face, both arms, and feet. R. 67–68. She also testified that she lived in a single family home, which had stairs that she takes her time to climb. R. 69. Plaintiff testified that she does her own cooking, cleaning, and laundry, but that these chores are spread out so she can pace herself. R. 78. She said she did no yard work and tried to avoid driving because of the numbness in her feet. R. 69.

Dr. Gilberto Munoz, a medical expert, also testified. Dr. Munoz testified that he had reviewed Plaintiff's entire file and concluded that she had chronic neck pain secondary to multiple

cervical spine ablation. The MRI showed no nerve root compression. Dr. Munoz also testified that Plaintiff had severe obstructive sleep apnea for which she required a CPAP machine. Dr. Munoz thought Plaintiff's impairment did not meet or medically equal a listed impairment, but that it did restrict her to the full range of sedentary work. R. 79–80.

In a decision dated March 10, 2015, the ALJ found Plaintiff was not disabled. R. 20–26. Following the Agency's five-step sequential evaluation process, the ALJ concluded at step one that Plaintiff met the insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since June 8, 2012, the alleged onset date. R. 22. At step two, the ALJ found that Plaintiff's neck pain was a severe impairment. R. 22. He determined Plaintiff's obesity, obstructive sleep apnea, and reported history of affective disorder were nonsevere because there was no evidence that Plaintiff experienced any symptoms related to any of these disorders. R. 22. At step three, the ALJ found Plaintiff's neck impairment did not meet or medically equal any listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ ultimately determined Plaintiff had the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). R. 23. With this RFC, the ALJ found at step four that Plaintiff was capable of performing her past relevant work as a telemarketer and an escrow officer. R. 25. Based on these findings, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act. Because the ALJ made this determination at step four, he did not continue onto step five. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 10, 2015. R. 1.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Plaintiff asserts four arguments on appeal. First, she argues that the ALJ erred in assessing the weight given to the various medical source opinions. Second, Plaintiff argues the ALJ erred in assessing the credibility of her statements about the intensity, persistence and limiting effects of her symptoms. Plaintiff next argues that the ALJ's RFC determination is not supported by substantial

evidence and is contrary to law. Lastly, Plaintiff alleges the ALJ erred in concluding at step four that she could perform her past relevant work.

**A. Weight Accorded to Treating and Non-Treating Medical Source Opinions**

The ALJ considered several different medical source opinions. Plaintiff's treating physician, Dr. Steven Coenen, wrote a letter on October 31, 2012, that Plaintiff was "permanently disabled and unable to seek gainful employment." R. 359. Dr. Coenen also indicated in a Worker's Compensation form entitled "Practioner's Report of Accident or Industrial Disease In Lieu of Testimony," which he completed on January 15, 2014, that Plaintiff had a 75% disability of her cervical spine due to a traumatic event that allegedly occurred on February 17, 2005, while she was employed by Evans Title Company and that rendered her unable to work as of September 14, 2012. R. 793–94. In addition, on January 9, 2013, and again on July 16, 2013, state agency consulting physicians reviewed Plaintiff's medical record and concluded that she could perform light work. R. 96, 117–18. Finally, Dr. Munoz reviewed Plaintiff's file and attended the hearing at which he testified that Plaintiff could perform the full range of sedentary work.

In assessing these medical source opinions, the ALJ gave Dr. Coenen's opinions "no decisional weight because they are fully unsupported by the claimant's longitudinal record." R. 25. He gave the state agency physicians "partial weight to the extent that they are consistent with the record as a whole." *Id.* Dr. Munoz's opinion, however, was given "controlling decisional weight, as it is consistent with the record in its entirety." *Id.* Based on the totality of evidence, the ALJ explained, he concurred with the medical expert and found that even allowing for the musculoskeletal symptoms and limitations that are supported by the medical evidence, Plaintiff remained capable of the full range of sedentary work. *Id.*

5

Plaintiff contends that this was error. More specifically, she contends that the ALJ erred in failing to give controlling weight to the opinions of Dr. Coenen, her treating physician, and that he compounded his error by giving controlling weight to the opinion of Dr. Munoz, the medical examiner.

Generally, the ALJ must give "controlling weight" to the medical opinion of a treating physician on the nature and severity of an impairment if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with other substantial evidence." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010); 20 C.F.R. § 416.927(c)(2); SSR 96-2p; *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If the ALJ decides to give lesser weight to a treating physician's opinion, he must articulate "good reasons" for doing so. *Larson*, 615 F.3d at 749. Put another way, although an ALJ is not required to give the treating physician's opinion controlling weight, he is still required to provide a "sound explanation for his decision to reject it." *Roddy*, 705 F.3d at 636 (citations omitted). The ALJ must then determine the opinion's weight using the factors listed in § 404.1527(c), including the "length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010) (quoting *Larson*, 615 F.3d at 751). The ALJ is not required to "explicitly weigh every factor." *Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 414–16 (7th Cir. 2008). Rather, the ALJ need only "sufficiently account for the factors." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

Plaintiff maintains the ALJ should have given Dr. Coenen's October 2012 opinion that Plaintiff was precluded from competitive employment as well as his later opinion that Plaintiff was

6

75% disabled controlling weight. She asserts the ALJ did not provide good reasons for giving Dr. Coenen's opinion "no decisional weight" and failed to consider the checklist factors. Although the ALJ did not explicitly weigh every factor, he clearly considered those that were relevant. After describing the longitudinal medical record, the ALJ explained that he gave Dr. Coenen's opinions no decisional weight because they were "fully unsupported by the claimant's longitudinal treatment record." R. 25. The ALJ clearly considered the types of tests performed, noting that Plaintiff's MRI showed no nerve root impingement, and that Plaintiff had x-rays but had initially declined a nerve conduction survey or EMG. R. 23–24. More importantly, the ALJ noted Dr. Coenen's opinions were not supported by the objective longitudinal record, specifically the gaps in Plaintiff's treatment, the absence of any acute pathology or abnormal neurological examination, the absence of evidence of nerve root impingement in the records, and the fact that her doctors never recommended anything more than conservative treatment. *Id.* These reasons were more than adequate for the ALJ's determination that the opinion of Dr. Coenen was not entitled to any weight, even though he was Plaintiff's treating physician.

It is also true, as the Commissioner points out, that Dr. Coenen's opinion that Plaintiff was "permanently disabled and unable to seek gainful employment" is not a proper "medical opinion" as defined by the regulations. The question of whether a claimant is disabled is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1). Although an ALJ may not ignore such an opinion, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, 1996 WL 374183 at *2. The ALJ did not ignore Dr. Coenen's opinion that Plaintiff was disabled and unable to seek employment. Instead, the

ALJ concluded from the entire record, including Dr. Coenen's own reports, that the medical and other evidence did not support it.

Based on this same evidence, it was also reasonable for the ALJ to credit the opinion of the medical expert who reviewed the entire file and testified at the hearing. Plaintiff complains that some of Dr. Munoz's testimony was not audible to the person who transcribed the hearing. R. 80. The few inaudible words in the brief testimony do not detract in any significant way from the substance of Dr. Munoz's testimony. He testified unequivocally that even though Plaintiff complained of chronic neck pain, the MRI showed no nerve root compression. And contrary to the state agency consultants, Dr. Munoz thought Plaintiff would be restricted to the full range of sedentary work. R. 80. Plaintiff, though represented by counsel, offered no challenge to Dr. Munoz and never sought clarification of his testimony. Even now, Plaintiff does not suggest that his opinion was not clear.

Plaintiff further asserts that the ALJ improperly gave controlling decisional weight to the medical examiner, a non-treating source. Pursuant to the regulations in effect at the time of the ALJ's decision, "opinions from sources other than treating sources can never be entitled to 'controlling weight.'" SSR 96-2p, 1996 WL 374188, at *2. Instead, opinions from other acceptable medical sources may only be entitled to "great weight." *Id.* Plaintiff asserts the ALJ erred in affording a non-treating source "controlling weight," rather than "great weight."

Even if the ALJ erred in using the phrase "controlling decisional weight" in describing the weight he afforded Dr. Munoz, this error was harmless. It is not enough to show that the ALJ erred in order for the court to reverse the Commissioner's decision. "[A]dministrative errors may be harmless," and it is a waste of both time and resources for the court to remand a case for further specification when it is clear that the ALJ will reach the same result. *McKinzey v. Astrue*, 641 F.3d

8

884, 892 (7th Cir. 2011). That is the case here. The ALJ's improper use of the phrase "controlling decisional weight," rather than the more appropriate phrase "great decisional weight" does not render the error harmless by itself. After all, the ALJ found that the medical examiner's opinion was the most consistent with the record as a whole and, therefore, should be accorded the most weight. I am convinced that the ALJ would arrive at the same conclusion if he were to accord the medical examiner's opinion "great decisional weight."

In sum, nothing in the medical record supports the substantial limitations Dr. Coenen reported. The ALJ rightly noted that Dr. Coenen's opinions were more extreme than the medical record warranted and appropriately relied on the objective medical evidence and lack thereof to discount Dr. Coenen's opinions about Plaintiff's limitations. The same evidence and lack thereof provided a reasonable basis for giving great weight to the opinion of Dr. Munoz. The ALJ provided sensible grounds for according the weight he did to these opinions and provided an "accurate and logical bridge" between the evidence and his conclusions. *Roddy*, 705 F.3d at 636.

**B. Evaluation of Alleged Symptoms**

Plaintiff also contends that the ALJ failed to properly assess the credibility of her statements about her subjective symptoms. The regulations set forth a two-step process for evaluating a claimant's statements about her symptoms. *See* 20 C.F.R. § 416.1529. The ALJ first determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* § 404.1529(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of the claimant's symptoms and determines how they limit the claimant's "capacity of work." *Id.* § 404.1529(c)(1). In evaluating the intensity and persistence of a claimant's symptoms, the ALJ looks to "all of the available evidence, including your history, the signs and laboratory

9

findings, and statements from you, your treating and nontreating source, or other persons about how your symptoms affect you." *Id.* The ALJ also considers medical opinions. *Id.* The ALJ then determines whether the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are consistent with the objective medical evidence and the other evidence of record.

Until recently, the SSA viewed the evaluation of the intensity, persistence, and limiting effects of the claimant's symptoms as a credibility determination. *See* SSR 96-7p, rescinded and superceded by SSR 16-3p (effective March 27, 2016, and republished October 25, 2017). In adopting SSR 16-3p, the SSA eliminated the use of the term "credibility" from its sub-regulatory policy in order to "clarify that subjective symptom evaluation is not an examination of an individual's character." 2017 WL 5180304, at *2 (Oct. 25, 2017). Under SSR 16-3p, the question the SSA asks is whether the symptoms claimed are "consistent with the objective medical and other evidence in the individual's record." *Id.* Since SSR 96-7p was in effect at the time the ALJ issued his decision in this case, it is that ruling that governs my review here. *Id.* at *1. Regardless, the result would be the same since the new ruling changed only its terminology, not its substance. Whether or not the SSA chooses to use the word "credibility," statements by the claimant concerning the intensity, persistence, and limiting effects of his or her impairments that are inconsistent with the medical and other evidence in the record need not be accepted by the ALJ in reaching a decision.

In any event, a court's review of a credibility, or consistency, determination is "extremely deferential." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). On judicial review, reviewing courts "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). The court is not to reweigh the evidence, resolve conflicts, decide questions of credibility,

10

or substitute its judgment for that of the Commissioner. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted).

Plaintiff claims the ALJ improperly relied upon his own interpretation of the medical opinions in concluding Plaintiff's subjective complaints of pain were not fully supported by the objective medical evidence. ECF No. 15 at 25. Indeed, an ALJ may not reject a claimant's statements about the intensity and persistence of her pain or other symptoms or about the effect her symptoms have on her ability to work "solely because the available objective evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2); SSR 96-7p. But that does not mean that the ALJ cannot consider the medical evidence in assessing a claimant's credibility. After all, objective medical evidence is "a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of an individual's symptoms and the effects those symptoms may have on the individual's ability to function." SSR 96-7p, 1996 WL 374186, at *6 (internal quotation marks and citations omitted); 20 C.F.R. § 404.1529(c)(2).

In this case, the ALJ's discussion of the medical evidence in relation to Plaintiff's alleged symptoms complied with the SSA's regulations and rulings on assessing claimant credibility. The ALJ concluded that "[t]he objective testing and physical findings on examination reported in claimant's medical record do not support the alleged severity of her symptoms." R. 24. In reaching this conclusion, the ALJ noted that when Plaintiff went to her doctor in June 2012 while she was working as a school bus driver and complained of facial numbness and constant pain at the base of her skull, physical examination showed full upper extremity strength and normal sensation to light

11

touch. Although examination showed some sensation loss to the right side of her face, Plaintiff declined the recommendation that she undergo an EMG and nerve conduction studies. A July 2012 cervical MRI showed marked degenerative changes at C6-7, but there was no evidence of any nerve root impingement. R. 23.

The ALJ noted that on July 30, 2012, Plaintiff presented at the Emergency Department of Aurora Medical Center with a complaint of non-cardiac chest pain and appears to have returned the following day on July 31, 2012, with a complaint of left-sided numbness or tingling. She was discharged with a diagnosis of "intermittent left sided paresthesias, improved. R. 23–24. Records from September 28, 2012, show that she was seeking acupuncture treatment, and a progress note from October 2012 indicates she reported a history of multiple treatments for pain in addition to acupuncture, including chiropractic, physical therapy, and epidural steroid injections. The ALJ acknowledged that the record also included an October 31, 2012 statement by Dr. Steven Coenen at the outpatient VA clinic in Appleton that Plaintiff's musculoskeletal symptoms were severe enough to preclude competitive employment, but noted that despite this statement from her treating physician, no more than conservative treatment had been offered or accepted. R. 24.

Plaintiff also complained of foot pain at this time, but x-rays showed only mild degenerative changes in her right foot. Despite Plaintiff's complaints of lower extremity related pain, the ALJ noted she stated she was walking to church with her dog every day. A December 4, 2012 note indicates that Plaintiff's foot pain could be effectively addressed with "no more than proper orthotics." R. 24. At a follow-up visit on January 17, 2013, Plaintiff complained of migraines and reported that her arms and hands are "falling asleep" more frequently since she had fallen earlier in December. R. 24 (citing R. 664). But progress notes and emergency records from April 2013, were

12

remarkable only for transient abdominal pain. On July 12, 2013, Plaintiff denied that she was having any problems with pain at the time. *Id.* (citing R. 784). Although a July 24, 2013 physical examination report indicated Plaintiff had some diminished upper extremity and grip strength, the ALJ noted that there was still no indication that more aggressive treatment, beyond a cervical collar, was needed. *Id.* (citing R. 361).

Further support for the ALJ's conclusion is provided in a December 13, 2013 note for a neurosurgery follow-up visit. According to the note, since her last office visit of November 8, 2013, Plaintiff had an EMG "which revealed mild CTS [carpal tunnel syndrome] but no evidence of cervical radiculopathy." R. 795. Compared to a previous study from December of 2007, the EMG was "again compatible with mild distal neuropathies at the wrists such as may be seen in CTS" *Id.* There was "minimal interval change," and "no EMG evidence for bilateral C5-8 radiculopathy." *Id.* An October 24, 2013 MRI showed no significant change from the July 2012 MRI. The neurosurgeon noted "no significant central stenosis." *Id.* He further noted there was some foraminal narrowing that was worse on the right, but Plaintiff claimed her symptoms were worse on the left and her EMG was negative for radiculopathy. Given the results of these tests, the neurosurgeon did not feel there were any surgical options to treat Plaintiff's symptoms. *Id.*

Finally, the ALJ noted that while there was a December 2013 report from Dr. Coenen referring to Plaintiff as having been found 75% disabled due to cervical spine related limitations, there were no subsequent reports in the longitudinal treatment record showing any treatment sought by Plaintiff for 10 months until October 28, 2014, when she went to the emergency room complaining of back pain. The ER records for her visit at that time did not reflect any acute pathology or show any abnormal examination results. R. 24. In fact, she had normal range of

13

motion in her neck with no tenderness, and full range of motion of all extremities without difficulty. R. 805.

After recounting this evidence, the ALJ concluded that Plaintiff was "not a credible witness" for a variety of reasons:

> The objective testing and physical findings on examination reported in claimant's medical record does not support the alleged severity of her symptoms. She declined diagnostic testing in the form of nerve conduction studies. Her symptoms were never assessed as severe enough to warrant surgery or more than conservative treatment. There is nothing to indicate that she sought treatment more than once in all of 2014. Additionally, the range of activities she affirms engaging in is inconsistent with the severity of her alleged symptoms.

R. 24–25. As to Plaintiffs admitted activities, the ALJ cited the fact that she cares for a pet, goes to church every day, and does household chores like cleaning, laundry and ironing. He also noted she drives a car, goes grocery shopping, attends quilter guild meetings, goes to the library, and engages in genealogy research on the computer. R. 25.

To be sure, none of these activities, taken by themselves, proves that Plaintiff can perform the full range of sedentary work on a sustained basis. But the ALJ did not say that they did. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms. *See Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013) ("The ALJ concluded that, taken together, the amount of daily activities Pepper performed, the level of exertion necessary to engage in those types of activities, and the numerous notations in Pepper's medical records regarding her ability to engage in activities of daily living undermined Pepper's credibility when describing her subjective complaints of pain and disability."). Considered together with the medical evidence and treatment history, the ALJ concluded that Plaintiff was not as limited as she claimed.

14

Essentially, Plaintiff asks that I reweigh the evidence presented and substitute my own opinion for that of the ALJ. However, I am not entitled to do so. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). The ALJ built an accurate and logical bridge in assessing Plaintiff's statements concerning her pain and other symptoms, and his conclusion is not patently wrong. Therefore, his assessment of Plaintiff's credibility does not necessitate remand.

**C. The RFC Assessment**

Plaintiff also alleges that her RFC assessment lacks substantial evidence and is contrary to law. An RFC measures the most an individual can do despite the physical or mental limitations imposed by her impairments. SSR 96-8p, 1996 WL 374184, at *2. In forming the RFC, an ALJ must review all of the relevant evidence in the record, including any information about the claimant's symptoms and any opinions from medical sources about what she can still do despite her impairments. *Id*. The ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. at *5.

Plaintiff's argument on this issue is essentially a repeat of her previous arguments that the ALJ improperly weighed the medical source opinions and her subjective complaints. I have already rejected those arguments. What remains of Plaintiff's argument is that the ALJ erred in not considering all of her impairments and the cumulative effects of her impairments in rendering an RFC. Specifically, Plaintiff alleges that the ALJ failed to consider the numbness and tingling that limits her arms and hands, and that he failed to consider her complaint of migraines. However, the ALJ did consider these limitations and rejected them because he found them less extreme than Plaintiff claimed. As to her upper extremities, Plaintiff asserts the numbness and tingling in her hands

15

and arms limited her ability to consistently work with her hands. ECF No. 15 at 28. The ALJ concluded Plaintiff did not require any limitations regarding her upper extremities because despite Plaintiff's complaints of pain, she denied any weakness in 2012 that would cause her to drop things. R. 24. Additionally, the ALJ noted that although a 2013 physical exam revealed some diminished grip and upper extremity strength, the fact that no physician recommended more aggressive treatment or surgery suggested it was not as problematic as Plaintiff claimed. *Id.* Similarly, the ALJ noted that Plaintiff complained of a migraine in late December 2012, but by July 2013, Plaintiff denied any problems with pain. *Id.* Plaintiff also testified at the administrative hearing that she never sought treatment from the VA for her migraines. R. 76. The ALJ considered these impairments when determining the RFC and concluded they did not warrant any further limitations. In short, the ALJ did not fail to acknowledge these impairments in building the RFC.

**D. Step Four and Past Relevant Work**

Plaintiff alleges that the ALJ erred in assessing her ability to perform past relevant work. But I have already rejected Plaintiff's arguments in support of this alleged error—that the ALJ erred in assessing Plaintiff's credibility, that the ALJ gave improper weight to the medical examiner's and Dr. Coenen's opinions, and that the ALJ determined an improper RFC. The SSA regulations provide that a claimant is not disabled if it is determined at step four of the sequential evaluation that she can perform her past relevant work either as she actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b).

In this case, the vocational expert described Plaintiff's prior work as follows. Plaintiff worked as a telemarketer, a semi-skilled position that is sedentary in physical demand per the Dictionary of Occupational Titles (DOT), and Plaintiff performed the work at a sedentary level. She

16

then worked as a school bus driver, a semi-skilled position that has medium physical demands per the DOT, and Plaintiff performed the work with light demands. Plaintiff also worked as an escrow officer, a skilled position that is sedentary in physical demand, and Plaintiff performed the work between a sedentary and light level. R. 84. After reviewing the record as a whole, the ALJ concluded Plaintiff had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a). As a result, he determined Plaintiff is capable of performing her past relevant work as a telemarketer and escrow officer. R. 25. The ALJ did not err in relying on the VE's testimony about Plaintiff's prior work to determine at step four that Plaintiff was capable of performing this relevant prior work.

Plaintiff had the burden to show that she could not perform her past relevant work. *See* 20 C.F.R. § 404.1512(a); 20 C.F.R. § 404.1520(a)(4)(i)–(iv). Rather than meet this burden, Plaintiff simply asks the Court to substitute its decision for that of the ALJ. The Court will not do so.

## CONCLUSION

For the above reasons and having found no error, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly.

Dated this   26th   day of March, 2018.

                                         s/William C. Griesbach
                                         William C. Griesbach, Chief Judge
                                         United States District Court